Rel: September 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2024-0704
_____

## Teresa Williams and Barney's Childcare and Learning Center, Inc., d/b/a Pooh Bear Academy

### v.

## Debbie Dodd et al.

### Appeal from Montgomery Circuit Court
### (CV-23-901240)

On Rehearing Ex Mero Motu

BRYAN, Justice.

This Court's opinion issued on May 9, 2025, is withdrawn, and the following is substituted therefor.

Teresa Williams and Barney's Childcare and Learning Center, Inc., d/b/a Pooh Bear Academy ("the day-care provider"), appeal from a judgment of the Montgomery Circuit Court purporting to dismiss their complaint against various officials and employees of the Alabama Department of Human Resources ("ADHR") and the Elmore County Department of Human Resources ("EDHR"). The officials and employees of both ADHR and EDHR are collectively referred to as "the DHR employees."[1] For the reasons stated below, we affirm the circuit court's judgment.

## I. Facts

---

[1]The DHR employees are Nancy Buckner, who was sued in her individual capacity and in her official capacity as Commissioner of ADHR; Debbie Dodd, Bridgette Smith, Stacey Sorrell, Bernard Houston, Tonya Swanner, and Dominic Binkley, employees of ADHR who were sued in their individual capacities; and Stacey Reed and Amanda Laney, employees of EDHR who were sued in their individual capacities.

On August 31, 2023, Williams and the day-care provider filed a complaint against the DHR employees. In their complaint, Williams and the day-care provider alleged the following facts.

On April 21, 2021, Williams, the operator of the day-care provider, applied for a renewal of the day-care provider's operating license, which was set to expire on June 6, 2021. On April 24, 2021, Williams requested a clearance report regarding V.F., a teacher employed by the day-care provider, from the central registry for child abuse and neglect ("CA/N"), which is maintained by ADHR. ADHR responded that V.F. had an indicated report for physical abuse for inappropriately disciplining her three-year-old child in 1997.

On July 29, 2021, Bridgette Smith, an ADHR consultant assigned to the day-care provider's license-renewal application, inspected the day-care provider's facility. Smith informed Williams that Smith would have to discuss with her supervisors what to do about V.F.'s CA/N report. On August 9, 2021, Smith and Debbie Dodd, Smith's supervisor, informed Williams that ADHR could not approve any waiver and that the deficiency would stand until either V.F.'s employment was terminated or a clear CA/N report was received. On August 12, Smith again informed

3

Williams that the deficiency still existed. The same day, Williams informed Smith and Dodd that V.F.'s employment had been terminated. It appears that Williams provided Smith and Dodd a copy of V.F.'s termination letter and that the letter identified Smith and Dodd by name.

Thereafter, Smith and Dodd directed Williams to remove their names from V.F.'s termination letter. On August 20, 2021, Williams drafted a new termination letter with Smith's and Dodd's names omitted, but she did not deliver that letter to Smith or Dodd.

On September 2, 2021, Dodd received a complaint indicating that V.F. was still working for the day-care provider. The next day, Smith and Dodd visited the day-care provider's facility. When they arrived, V.F. was present at the facility and was completing an application for food assistance. Without making any other inquiries, Dodd demanded that Williams deliver V.F.'s termination letter with her and Smith's names omitted. According to the complaint, Dodd screamed and yelled at Williams and threatened that, if she did not deliver the letter, the deficiency would remain, the day-care provider's license would not be renewed, and multiple other deficiencies would be reported to ADHR. Based on those alleged threats, Williams went to her home, retrieved the

4

letter, and gave it to Dodd and Smith. Dodd and Smith then left the day-care provider's facility.

On September 24, 2021, Smith returned to the day-care provider's facility, but she was denied entry. Immediately thereafter, Williams called Bernard Houston, ADHR's Administrator for Childcare Services and Workforce Development, and informed him by voice message that Dodd and Smith were not welcome at the day-care provider's facility but that any other consultants were fine. Williams requested that Houston call her back, but Houston never did.

On September 27, Smith and Dodd visited the day-care provider's facility, but they were denied entry. Smith and Dodd then gave Williams a letter from Tonya Swanner, a program manager in ADHR's Childcare Licensing Division, warning Williams that denying Smith and Dodd access could affect the renewal of the day-care provider's license. The same day, Dodd contacted EDHR and reported that there was inadequate supervision of children at the day-care provider's facility and her suspicion that V.F. was still employed there.

Based on Dodd's report, Amanda Laney, a social-services case worker with EDHR, visited the day-care provider's facility the following

day. Laney found no indication that there was inadequate supervision at the day-care provider's facility or that V.F. was still employed there. Nevertheless, based on instructions from Stacey Reed, Laney's supervisor, Laney swore out a warrant for Williams's arrest.

On the afternoon of September 29, 2021, Smith and Swanner arrived at the day-care provider's facility with multiple police officers. Smith and Swanner delivered to Williams a notice and a letter signed by Nancy Buckner, the Commissioner of ADHR, temporarily suspending the day-care provider's license and closing its facility immediately. The police officers arrested Williams, and Smith and Swanner published the suspension notice and delivered the letter to parents of children attending the day-care provider's facility as they came to pick up the children. Over the next several days, Dominic Binkley, ADHR's communications director, published the substance of the suspension notice and the letter through various news outlets, including AL.com, WSFA 12 News, and WAKA 8 News. Williams's criminal charges were later dismissed.

On October 28, 2021, ADHR sent Williams a letter stating that the day-care provider's license was still suspended. The letter also informed

Williams that ADHR was revoking the day-care provider's license and denying its application for a renewal of the license. In the letter, ADHR outlined its reasons for revoking the license.

Williams requested a hearing to contest ADHR's decision ("the administrative action"). On January 14, 2022, after a hearing, an administrative law judge ("ALJ") conditionally affirmed ADHR's decision to revoke the day-care provider's license and to deny Williams's application for a renewal of the license. In his final decision, the ALJ directed ADHR to inspect the day-care provider's facility again and to issue it a license if it found the day-care provider to be in compliance with ADHR's minimum standards. Thereafter, ADHR inspected the day-care provider's facility and issued it a license.

The day-care provider appealed to the circuit court, which affirmed the ALJ's decision on June 14, 2022. The day-care provider then appealed to the Court of Civil Appeals, which dismissed the appeal on the ground that it was moot because the temporary suspension of the day-care provider's license had expired and because ADHR had issued it a new license. Pooh Bear Acad. v. Alabama Dep't of Human Res., 399 So. 3d 1041 (Ala. Civ. App. 2023).

7

On August 31, 2023, Williams and the day-care provider initiated the present action against the DHR employees ("the tort action"). In the complaint, Williams and the day-care provider asserted claims of extortion, the tort of outrage, wantonness, defamation, negligence, and malicious prosecution. They also sought a judgment declaring the rights of day-care-center owners and operators under administrative regulations requiring that a suitability determination be made regarding any day-care employee with an indicated CA/N report.

On August 5, 2023, in four separate motions, the DHR employees moved the circuit court to dismiss, under Rule 12(b)(6), Ala. R. Civ. P., Williams and the day-care provider's complaint. The DHR employees attached to those motions a copy of the ALJ's final decision in the administrative action, the circuit court's decision affirming the ALJ's decision, and the Court of Civil Appeals' decision dismissing the day-care provider's appeal. In their motions to dismiss, all the DHR employees except Binkley asserted that they were entitled to State immunity and State-agent immunity.

On January 22, 2024, the DHR employees amended their motions to dismiss to also assert that Williams and the day-care provider's claims

8

were barred by the doctrine of collateral estoppel. The DHR employees argued that both the administrative action and the tort action involved the issue whether ADHR had grounds for suspending and revoking the day-care provider's license and denying its application for renewal and that that issue had been fully litigated in the administrative action.

On March 27, 2024, Williams and the day-care provider responded to the DHR employees' motions to dismiss, arguing that the DHR employees were asserting affirmative defenses that are more appropriately considered at the summary-judgment stage. On April 25, 2024, after a hearing on the DHR employees' motions to dismiss, the circuit court entered a judgment purporting to dismiss Williams and the day-care provider's complaint based on the doctrine of collateral estoppel. In its judgment, the circuit court noted that, although Binkley had not yet been served, the "clear controlling rule of law in this case will nevertheless remain."[2]

---

[2]At the time of the entry of the circuit court's judgment, Binkley had not yet been served. Nevertheless, the circuit court's judgment was final. This Court has held:

> "'When there are multiple defendants and the summons or other document to be served and complaint has been served

On May 23, 2024, Williams and the day-care provider moved to alter, amend, or vacate the circuit court's judgment ("the postjudgment motion"). On May 30, 2024, the circuit court set the postjudgment motion for a hearing to be held on July 1, 2024.

On June 12, 2024, Williams and the day-care provider moved to continue the hearing on the postjudgment motion to September 5, 2024. In the motion to continue, Williams and the day-care provider noted that, "[p]ursuant to Rule 59.1, Ala. R. Civ. P., [the postjudgment motion] must be ruled upon within ninety days from its filing or the same is deemed

---

on one or more, but not all, of the defendants, the plaintiff may proceed to trial and judgment as to the defendant or defendants on whom process has been served and if the judgment as to defendants who have been served is final in all other respects, it shall be a final judgment.' Rule 4(f), [Ala. R. Civ. P.,] as amended March 1, 1982.

"Under Rule 4(f), service on the other defendants must be completed, not merely attempted, before it can be said the pending action involves other active defendants."

Owens v. National Sec. of Alabama, Inc., 454 So. 2d 1387, 1388 n.2 (Ala. 1984). See also Ex parte Harrington, 289 So. 3d 1232, 1237 n.5 (Ala. 2019)("A judgment that disposes of fewer than all the defendants is final when the defendants as to whom there has been no judgment have not yet been served with notice.").

10

denied by operation of law." Williams and the day-care provider then asserted:

> "[Williams and the day-care provider's counsel] has conferred with counsel for [the DHR employees] and has received consent for the hearing to be continued including the same being heard and ruled upon at a time exceeding the ninety-day requirement. Rule 59.1 allows such extension with the express consent of the parties."

The circuit court granted Williams and the day-care provider's motion to continue and scheduled the hearing on the postjudgment motion for September 5, 2024. After the hearing on the postjudgment motion, the circuit court denied that motion on September 12, 2024. On October 17, 2024, Williams and the day-care provider filed their notice of appeal.

## II. Standard of Review

> "On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."

11

Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993) (citations omitted).

### III. Analysis

### A. Jurisdiction

On original submission, this Court determined that Williams and the day-care provider's notice of appeal was untimely because they did not file it within 42 days of the denial by operation of law of their postjudgment motion, as required by Rule 4(a)(1), Ala. R. App. P. We held that, although Williams and the day-care provider had filed their notice of appeal within 42 days after the circuit court's September 12, 2024, order denying the postjudgment motion, that order was a nullity because it had been entered after the expiration of the circuit court's time for ruling on the postjudgment motion, as set forth in Rule 59.1, Ala. R. Civ. P. We concluded that the parties had not properly extended the circuit court's time for ruling on the postjudgment motion because the record before this Court reflected that the parties' express consent to extend that time did not occur until the hearing on September 5, 2024, which was more than 90 days after the postjudgment motion had been filed. Based on this Court's previous decision in Ex parte Caterpillar,

<u>Inc.</u>, 708 So. 2d 142 (Ala. 1997), and the Court of Civil Appeals' decision in <u>Scheilz v. Scheilz</u>, 579 So. 2d 674 (Ala. Civ. App. 1991), we concluded that the parties' consent was ineffective because the parties' consent did not appear of record until after the circuit court's time for ruling on the postjudgment motion had expired. Accordingly, we concluded that Williams and the day-care provider's postjudgment motion had been denied by operation of law at the end of the circuit court's time for ruling on the postjudgment motion and that the notice of appeal was untimely because it was filed more than 42 days later.

After this Court released its opinion on original submission, Williams and the day-care provider moved the circuit court to supplement the record on appeal in accordance with Rule 10(f), Ala. R. App. P., and they filed a copy of that motion with this Court, as required by Rule 10(f). In their motion to supplement, Williams and the day-care provider submitted their motion to continue the hearing on the postjudgment motion and the circuit court's order granting that motion, neither of which had been included in the record on original submission.

Williams and the day-care provider then requested that this Court suspend the time for filing an application for a rehearing until the circuit

court ruled on their motion to supplement the record. In that filing, Williams and the day-care provider explained that the motion to continue and the circuit court's order granting that motion were not included in the original record on appeal because Rule 10(a)(2), Ala. R. App. P., prohibits inclusion of motions to continue and orders on such motions in the record on appeal.

This Court, ex mero motu, set Williams and the day-care provider's appeal for rehearing. After Williams and the day-care provider's motion to supplement the record was denied by operation of law, Williams and the day-care provider filed a motion requesting that this Court order the circuit court to supplement the record. This Court granted that motion.

Rule 10(a) provides, in relevant part:

"The record on appeal … shall not contain the following, unless some particular question is raised with respect thereto and decided in the trial court and unless specifically designated by a party:

"….

"(2) motion and order of continuance."

(Emphasis added.) It appears that Williams and the day-care provider attempted to comply with that rule by omitting from the record on appeal

14

their motion to continue the hearing on the postjudgment motion and the circuit court's order granting that motion. But in attempting to comply with Rule 10(a), it appears that Williams and the day-care provider stumbled into a potential pitfall recently created by a rule change adopted by this Court.

Before 2020, Rule 59.1 provided, in pertinent part:

"No postjudgment motion … shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record, or unless extended by the appellate court to which an appeal of the judgment would lie, and such time may be further extended for good cause shown."

(Emphasis added.) Under that version of the rule, consent to extend the circuit court's period for ruling on a postjudgment motion had to appear of record. "'[C]onsent or assent to a continuance of a hearing [did] not satisfy the requirement that the record show the parties' express consent to an extension of the 90-day period.'" Ex parte Bodenhamer, 904 So. 2d 294, 295 (Ala. 2004) (quoting Harrison v. Alabama Power Co., 371 So. 2d 19, 20-21 (Ala. 1979)) (emphasis added). Accordingly, a motion to continue a hearing on a postjudgment motion and an order granting such a motion could safely be omitted from the record on appeal in accordance

15

with Rule 10(a)(2) because they were not only unnecessary, but insufficient, to extend the trial court's period for ruling on a postjudgment motion.

In 2020, this Court amended Rule 59.1 to add the following sentence: "Consent to extend the time for a hearing on the postjudgment motion beyond the 90 days is deemed to include consent to extend the time for the trial court to rule on and dispose of the postjudgment motion." For the first time, a motion to continue the postjudgment hearing beyond the trial court's time for ruling on a postjudgment motion could operate to extend that time. But the amendment did not remove Rule 59.1's requirement that the consent appear of record, and it did not alter Caterpillar's and Scheilz's holdings that the consent had to appear of record before the trial court's time for ruling on the postjudgment motion expired.

Thus, when parties consent to continue a hearing on a postjudgment motion without otherwise consenting to extend the trial court's time for ruling on the postjudgment motion, the consent to continue must also appear of record before the trial court's time for ruling on the postjudgment motion expires. Accordingly, when consent to

16

continue the hearing on a postjudgment motion is reflected in a motion to continue, that motion to continue must appear in the record on appeal, notwithstanding Rule 10(a)(2)'s general requirement that "motion[s] and order[s] of continuance" be omitted from the record on appeal.

Here, Williams and the day-care provider's motion to continue the hearing on the postjudgment motion reflected the parties' consent to extend the circuit court's time for ruling on the postjudgment motion. That motion appeared in the circuit court's record before the circuit court's time for ruling on the postjudgment motion expired. The only problem was that the motion to continue was not included in the original record on appeal. Since that omission was attributable to a potential conflict between Rule 10(a)(2) and Rule 59.1, as recently amended in 2020, and because it is undisputed that the parties consented to continue the hearing on the postjudgment motion beyond the circuit court's time for ruling on the postjudgment motion, on rehearing we permitted Williams and the day-care provider to supplement the record with the motion to continue and the circuit court's order granting that motion. But we take this opportunity to clarify and emphasize that, in future cases, if the only entry in the trial court's record that shows consent to

17

extend the trial court's time for ruling on a postjudgment motion is a motion to continue the hearing on a postjudgment motion beyond the trial court's time for ruling on the postjudgment motion, that motion and the order granting the continuance must be included in the record on appeal. Otherwise, this Court must conclude that the postjudgment motion was denied at the end of the trial court's time for ruling on the postjudgment motion for purposes of determining whether the notice of appeal was timely filed.

Based on the documents included in the supplemental record, the parties' consent to continue the hearing on the postjudgment motion was of record before the end of the circuit court's time for ruling on the postjudgment motion. Accordingly, the circuit court had additional time beyond that period to rule on the postjudgment motion. Thus, the circuit court denied the postjudgment motion by order on September 12, 2024, rather than by operation of law at the end of the circuit court's time for ruling on the postjudgment motion, and Williams and the day-care provider's October 17, 2024, notice of appeal was timely filed.

## B. The Merits

18

Williams and the day-care provider contend that the circuit court erred in dismissing their claims based on the doctrine of collateral estoppel because, they say, the elements of collateral estoppel do not appear clearly on the face of their complaint. In support of that argument, Williams and the day-care provider cite authority for the proposition that "'"a dismissal under Rule 12(b)(6) may be based on an affirmative defense when the defense is clear from the face of the pleadings."'" Ex parte Drury Hotels Co., 303 So. 3d 1188, 1193 (Ala. 2020) (quoting Ex parte Scannelly, 74 So. 3d 432, 438 (Ala. 2011), quoting in turn 1 Moore's Federal Rules Pamphlet § 12.4[5][b], p. 186 (2010)).

In Scannelly, this Court held that a motion to dismiss based on the doctrine of res judicata, which is related to the doctrine of collateral estoppel, should have been treated as a motion for a summary judgment. This Court explained its holding, as follows:

> "It is apparent that the portion of [the defendant's] motion relating to the affirmative defense of res judicata (paragraphs 6 and 7 of his 'Motion to Dismiss'), which portion [the defendant] insists constitutes a Rule 12(b)(6) challenge, was, instead, a motion for a summary judgment. There is a notable distinction between a motion to dismiss filed pursuant to Rule 12(b)(6) and a motion for a summary judgment:

19

"'The Rule 12(b)(6) motion ... must be distinguished from a motion for summary judgment under Rule 56, [Ala. R. Civ. P.,] which goes to the merits of the claim -- indeed, to its very existence -- and is designed to test whether there is a genuine issue of material fact. The Rule 12(b)(6) motion ... only tests whether the claim has been adequately stated in the complaint. Thus, ... on a motion under Rule 12(b)(6), the [trial] court's inquiry essentially is limited to the content of the complaint; a motion for summary judgment, on the other hand, often involves the use of pleadings, depositions, answers to interrogatories, and affidavits.'

"5B Charles Alan Wright & Arthur C. Miller, Federal Practice and Procedure § 1356, at 372-75 (3d ed. 2004) (footnote omitted). See also Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So. 2d 784, 791 (Ala. 2007) ('"Since the facts necessary to establish an affirmative defense generally must be shown by matters outside the complaint, the defense technically cannot be adjudicated on a motion under Rule 12[, Fed. R. Civ. P.]." 5 Charles Alan Wright and Arthur C. Miller, Federal Practice and Procedure § 1277 (3d ed.2004).'), and 1 Moore's Federal Rules Pamphlet § 12.4[5][b], p. 186 (2010) ('When the plaintiff's own factual allegations affirmatively demonstrate that the plaintiff cannot recover, dismissal under Rule 12(b)(6) is appropriate.... Similarly, a dismissal under Rule 12(b)(6) may be based on an affirmative defense when the defense is clear from the face of the pleadings.' (emphasis added)).

"Clearly, [the defendant's] res judicata argument raised issues that were not apparent from the face of [the plaintiff's] complaint. This Court has previously indicated that because 'a 12(b)(6) motion to dismiss only encompasses the determination of whether the pleading states a claim upon

which relief can be granted .... [m]atters outside the pleadings should never be considered in deciding whether to grant a 12(b)(6) motion.' Hales v. First Nat'l Bank of Mobile, 380 So. 2d 797, 800 (Ala. 1980). See also 1 Moore's Federal Rules Pamphlet § 12.4[5][d], p. 186 (2010) ('Because the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleader's claims for relief, the court generally may consider only the pleadings and incorporated exhibits in resolving the motion....'), and 1 Champ Lyons, Jr., & Ally W. Howell, Alabama Rules of Civil Procedure Annotated § 12.7, p. 304 (4th ed. 2004) ('[The defense of res judicata is] generally considered appropriately raised by a motion to dismiss only in a context where the defect appears on the face of the complaint.').

"In HealthSouth Corp., supra, this Court examined a defendant's 'motion to dismiss' based on the doctrines of res judicata and collateral estoppel. Like [the plaintiff's] complaint in the present case, the plaintiff's complaint in HealthSouth Corp. contained no reference to other litigation. In concluding that, despite the label assigned the motion by the defendant, the motion actually constituted a motion for a summary judgment, this Court stated:

> "'Although [the defendant's] motion addressing its defenses of res judicata and collateral estoppel was actually framed as a "motion to dismiss," the motion should have been treated as one seeking a summary judgment because the face of the complaint did not reference the prior litigation and [the defendant] properly pleaded res judicata and collateral estoppel in its answer. The substance of a motion, not what a party calls it, determines the nature of the motion. Ex parte Lewter, 726 So. 2d 603 (Ala. 1998).'

21

> "HealthSouth Corp., 979 So. 2d at 792. Therefore, we conclude, as we did in HealthSouth Corp., that, in substance, [the defendant's] motion was 'one seeking a summary judgment.' Id."

Scannelly, 74 So. 3d at 438-39.

In Scannelly, we did not hold that the doctrine of res judicata, or the related doctrine of collateral estoppel, could never be asserted in a motion to dismiss. However, we noted that those doctrines, like other affirmative defenses, could be properly asserted in a motion to dismiss only if those defenses were "readily apparent from the face of the complaint." Scannelly, 74 So. 3d at 439. Like the complaints in Scannelly and Lloyd Noland Foundation, Inc. v. HealthSouth Corp., 979 So. 2d 784 (Ala. 2007), Williams and the day-care provider's complaint contained no reference to the administrative action. Thus, the circuit court could have avoided converting the motion to dismiss into a summary-judgment motion only by refusing to consider the decisions in the administrative action in dismissing the claims. See Ex parte Liberty Nat'l Life Ins. Co., 825 So. 2d 758, 762-63 (Ala. 2002) (holding that a motion to dismiss was not converted into a summary-judgment motion when trial court did not consider materials outside the complaint).

22

This Court does not assume that a trial court considered matters outside the pleadings merely because extraneous materials were attached to a motion to dismiss. Ex parte Price, 244 So. 3d 949, 954-55 (Ala. 2017). However, here, the circuit court clearly considered the decisions in the administrative action because it dismissed Williams and the day-care provider's claims based on the doctrine of collateral estoppel and repeatedly referred to those decisions in its judgment. Accordingly, the circuit court converted the DHR employees' motions to dismiss into motions for a summary judgment, even though its judgment purported to dismiss Williams and the day-care provider's claims. See A.W. ex rel. Hogeland v. Wood, 57 So. 3d 751, 756 (Ala. 2010) (holding that, "'where matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12(c), [Ala. R. Civ. P.], regardless of its denomination and treatment by the trial court'" (quoting Boles v. Blackstock, 484 So. 2d 1077, 1079 (Ala. 1986)) (emphasis added)).[3]

---

[3]This Court has held that, "if a motion under Rule 12(b)(6) is converted into a motion for summary judgment, both parties shall be given a reasonable opportunity to submit affidavits and other extraneous proofs to avoid a party being taken by surprise through conversion of the

For the most part, Williams and the day-care provider maintain that the circuit court did not convert the DHR employees' motions to dismiss into summary-judgment motions. However, as explained above, that position is incorrect. In the alternative, Williams and the day-care provider contend that, even if the circuit court did convert the motions, the judgment was incorrect.

First, Williams and the day-care provider complain that the circuit court's judgment adopted the DHR employees' conclusory representations regarding the ALJ's decisions in the administrative action. They assert that the circuit court overlooked and misstated the actual findings of fact by the ALJ and ignored the fact that none of the elements of collateral estoppel were satisfied. However, Williams and

_____

motion to dismiss to one for summary judgment." Hales v. First Nat'l Bank of Mobile, 380 So. 2d 797, 799 (Ala. 1980). When raised by the nonmovant, failure to provide notice and an opportunity to submit evidence in opposition "is prejudicial error requiring reversal." Id. Here, nothing in the record indicates that the circuit court made the parties aware of its intention to treat the DHR employees' motions to dismiss as having been converted to summary-judgment motions. Nevertheless, Williams and the day-care provider made no argument in their postjudgment motion that the circuit court had failed to notify them of the conversion, and they make no such argument in their briefs before this Court. Accordingly, we will not reverse the circuit court's judgment on that basis.

24

the day-care provider's argument is itself conclusory. They do not demonstrate from the ALJ's final decision that the circuit court's representations of that decision were incorrect. Instead, they merely cite the pages of the record at which the circuit court's judgment appears.

Further, Williams and the day-care provider contend that the ALJ's final decision in the administrative action not only does not support the application of collateral estoppel but, instead, demonstrates that collateral estoppel does not apply. In support of this argument, Williams and the day-care provider cite the following statement of the elements of collateral estoppel:

> "'"'"(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision."'"'"

Ex parte Buffalo Rock Co., 941 So. 2d 273, 277 (Ala. 2006) (citations omitted). Williams and the day-care provider contend that the ALJ's findings of fact show that

> "1) none of the [DHR employees] were a party to the administrative hearing, 2) none of [Williams and the day-care provider's] claims were issues for which the administrative

25

hearing was held, 3) the administrative hearing could not and did not afford opportunity to litigate [Williams and the day-care provider's] claims, 4) none of [Williams and the day-care provider's] claims were actually litigated and determined in the administrative hearing; and, 5) there was no finding on any of [Williams and the day-care provider's] claims and even had there been they were unnecessary to the administrative decision."

Williams and the day-care provider's brief on original submission, p. 20. Finally, Williams and the day-care provider contend that the ALJ made no findings of fact regarding the DHR employees' conduct and that, even if he had, the above elements of collateral estoppel were not satisfied.

There are multiple problems with Williams and the day-care provider's arguments. First, Williams and the day-care provider cite no authority other than Buffalo Rock, which they cite only for the elements of collateral estoppel. This Court has held that citing authority merely for general propositions of law is insufficient to satisfy the requirement of Rule 28(a)(10), Ala. R. App. P., that an appellate brief include "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." For example, in Griggs v. NHS Management, LLC, [Ms. SC-2023-0784,

26

Nov. 15, 2024] ___ So. 3d ___, ___ (Ala. 2024), this Court held that "citing authority merely for the elements of a cause of action is generally not sufficient to argue in an appellate brief that the allegations in a complaint met the pleading standard regarding each element." See also Davis v. Sterne, Agee & Leach, Inc., 965 So. 2d 1076 (Ala. 2007) (holding that a citation to authority for traditional four-element test of negligence was not sufficient to support an argument regarding negligence claims); and S.B. v. Saint James Sch., 959 So. 2d 72 (Ala. 2006) (overruled on other grounds, as recognized in Flickinger v. King, 385 So. 3d 504, 517 (Ala. 2023)) (holding that an argument failed to comply with Rule 28(a)(10) when it consisted of a single citation regarding duty and a series of factual statements and conclusory statements of liability). Like the arguments in Griggs, Davis, and S.B., Williams and the day-care provider's argument consists of only a citation to the elements of collateral estoppel and a few conclusory statements that the ALJ's final decision in the administrative action did not establish the elements of collateral estoppel. Accordingly, that argument does not satisfy the requirements of Rule 28(a)(10).

Further, Williams and the day-care provider's argument conflates the doctrine of collateral estoppel with the doctrine of res judicata. Collateral estoppel precludes relitigation of <u>issues</u> that were actually litigated in a previous proceeding, whereas res judicata bars litigation of <u>claims</u> that were or should have been litigated in a previous proceeding. See, generally, <u>Lee L. Saad Constr. Co., Inc. v. DPF Architects, P.C.</u>, 851 So. 2d 507 (Ala. 2002). Nevertheless, in arguing that the elements of collateral estoppel listed in <u>Buffalo Rock</u> were not satisfied, Williams and the day-care provider argue that

> "2) none of [Williams and the day-care provider's] <u>claims</u> were issues for which the administrative hearing was held, 3) the administrative hearing could not and did not afford opportunity to litigate [Williams and the day-care provider's] <u>claims</u>, 4) none of [Williams and the day-care provider's] <u>claims</u> were actually litigated and determined in the administrative hearing; and, 5) there was no finding on any of [Williams and the day-care provider's] <u>claims</u> and even had there been they were unnecessary to the administrative decision."

Williams and the day-care provider's brief on original submission, p. 20 (emphasis added). Accordingly, Williams and the day-care provider's argument is, for the most part, irrelevant to collateral estoppel.

As for Williams and the day-care provider's argument regarding the first element of collateral estoppel -- identity of the parties or their privies -- Williams and the day-care provider simply assert that none of the DHR employees were parties to the administrative action. They do not address whether privity existed between ADHR or EDHR and the DHR employees.

For these reasons, Williams and the day-care provider have not demonstrated that the circuit court erred in entering a summary judgment against them based on collateral estoppel.[4]

### IV. Conclusion

For these reasons, we affirm the circuit court's judgment.

---

[4]The parties also address whether the circuit court's judgment was proper based on State immunity or State-agent immunity. However, we need not address those issues because Williams and the day-care provider do not demonstrate that the circuit court's judgment on its stated basis of collateral estoppel was incorrect. Because this Court can affirm a trial court's judgment on any valid ground consistent with due process, Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So. 2d 1013, 1020 (Ala. 2003), we can affirm the circuit court's judgment without addressing the immunity issues.

ON REHEARING EX MERO MOTU: OPINION OF MAY 9, 2025, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.

Stewart, C.J., and Shaw, Wise, Sellers, Mendheim, Cook, McCool, and Lewis, JJ., concur.